**SHEERBONNET, LTD.,**
Plaintiff–Appellant,

v.

**AMERICAN EXPRESS BANK
LTD., Defendant–Appellee.**

**No. 262, Docket 93–7330.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 24, 1993.

Decided Feb. 22, 1994.

Jack P. Levin, New York, NY (Lawrence A. Darby, III, David W. Haller, Howard Darby & Levin, New York, NY, of counsel), for Plaintiff–Appellant.

Joseph T. Baio, New York, NY (John J. Halloran, Jr., Carl L. Stine, Joanne M. Chormanski, Willkie Farr & Gallagher, New York, NY, of counsel), for Defendant–Appellee.

Before: VAN GRAAFEILAND, PRATT, and WALKER, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

This is one of many cases arising out of the seizure in July 1991 of the assets of the Bank of Credit and Commerce International ("BCCI"). Despite its having secured one of the most reliable methods of payment—an irrevocable letter of credit from a Swiss bank—Sheerbonnet, Ltd., stymied by the chance convergence of its "payment due" date with the shutdown of BCCI's worldwide operations, never was paid for work it did. While the payment was on its way from New York to Sheerbonnet's bank account in London, it was swept up in the state regulations that govern the assets of failed banking institutions. By a diversity action in the United States District Court for the Southern District of New York, Loretta A. Preska, *Judge*, Sheerbonnet seeks damages from American Express, one of the banks through which Sheerbonnet's payment was being transferred. The district court dismissed the complaint in deference to ongoing state proceedings under the abstention principles of *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). For the reasons set forth below, we reverse.

## FACTS AND BACKGROUND

In October 1990 Sheerbonnet, a British company, entered into a contract to sell troop carriers to Hady Establishment ("Hady"), a Saudi Arabian company, for the Allied forces to use in the Persian Gulf War. To pay for the carriers, Hady obtained an irrevocable letter of credit in favor of Sheerbonnet from a Swiss bank, Banque Scandinave. The $14,080,000 purchase price was to be paid in two installments—10 percent as a down payment and the remaining 90 percent due 60 days after the bill of lading date.

Sheerbonnet received the down payment and fulfilled all of its obligations under the contract. As a result, the final installment of $12,441,600 was due on July 5, 1991. Sheerbonnet wanted the payment, which was to be made in American dollars, deposited to its account with BCCI in London ("BCCI London"). Accordingly, on July 3, 1991, Banque Scandinave informed BCCI London that $12,441,600 would be credited to BCCI London's account 52985 with the American Express Bank in New York ("American Express") for value on July 5, 1991. Banque Scandinave then directed its correspondent bank in New York, Northern Trust International ("Northern Trust"), to make the transfer on July 5.

Due to an ill-timed turn of events, however, Sheerbonnet never received the final installment. Early in the morning of July 5, 1991, regulators in England and Luxembourg suspended the operations of BCCI, S.A. On the same day in the United States, before the start of business on the East Coast, the Federal Reserve Bank advised several banks, including American Express, that BCCI worldwide had been closed and that BCCI's New York Agency would be seized. At 9 a.m. E.D.T., the Superintendent of Banks of the State of New York ("Superintendent") closed the New York Agency of BCCI and announced the seizure of all BCCI "business and property" located within New York.

Less than a quarter of an hour later, American Express received from Northern Trust a payment message for the transfer of $12,441,600 through American Express to BCCI London, in accordance with Banque Scandinave's July 3 telex. Although it already knew that BCCI's operations, in New York and elsewhere, had been suspended, American Express accepted the message and "credited" BCCI London's account 52985. Because BCCI's New York assets had been frozen, the money remained in New York.

Acting under the authority granted him by section 606(4)(a) of New York's Banking Law, the Superintendent initiated a liquidation proceeding in the Supreme Court of New York ("Liquidation Court") to dispose of BCCI's assets. In March 1992 the Superintendent petitioned the Liquidation Court for an order compelling several New York banks, including American Express, to turn over funds of BCCI that they held on deposit, net of the banks' setoffs. After the Superintendent and the banks reached a settlement agreement, the Liquidation Court entered a turnover order on April 27, 1992, which directed the banks to remit to the Superintendent funds in the New York accounts of BCCI, net of claimed setoffs and

debits. Upon such remittance, the turnover order provided, the banks would be "discharged from liability with respect to claims for funds of BCCI, S.A. located in New York".

American Express did not turn over to the Superintendent any of the funds from the BCCI London account, because it claimed a right to those funds as a setoff against debts owed to it by BCCI. Thus, the money originally destined for Sheerbonnet ended up not in the hands of the buyer or the seller, but of a bank whose only role was to transfer the funds.

In October 1992 Sheerbonnet sued American Express in the United States District Court for the Southern District of New York, alleging conversion, tortious interference with contract, and unjust enrichment. In essence, Sheerbonnet claimed that American Express should not, without notifying either the sender or the intended recipient, have accepted the funds from Northern Trust or "credited" them to BCCI London's account when it knew that the BCCI assets had been frozen. In addition, Sheerbonnet argued that American Express "made a conscious decision to turn its knowledge and position [in the transfer transaction] to its own advantage", because American Express knew that under New York law it would be able to retain the funds as a setoff against BCCI's debts to American Express.

Judge Preska dismissed Sheerbonnet's complaint, holding that under *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), abstention was required in deference to the state liquidation proceedings. Sheerbonnet now appeals.

## DISCUSSION

■ At the outset, we note that we review the decision to abstain for abuse of discretion. The underlying legal questions, however, are subject to plenary review. *De Cisneros v. Younger,* 871 F.2d 305, 307 (2d Cir.1989).

American Express urges us to affirm the district court's decision to abstain under the *Burford* doctrine or, in the alternative, to hold that abstention was proper under the

principles articulated in *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). We address each contention in turn.

### A. Burford *Abstention*

■ The *Burford* doctrine requires federal courts to abstain from deciding questions of state law when federal review would disrupt a state's efforts to establish a coherent policy on a matter of substantial importance to the state. *See Colorado River,* 424 U.S. at 814, 96 S.Ct. at 1244; *City of Hartford v. Chase,* 942 F.2d 130, 136 (2d Cir. 1991); *Alliance of Am. Insurers v. Cuomo,* 854 F.2d 591, 599 (2d Cir.1988).

In *New Orleans Public Service, Inc. v. Council of New Orleans,* 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989), the Supreme Court capsulized the principles underlying the *Burford* doctrine.

> Where timely and adequate state-court review is available, a federal court * * * must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing upon public problems of substantial public import whose importance transcends the result in the case at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*Id.* at 361, 109 S.Ct. at 2514 (quoting *Colorado River,* 424 U.S. at 814, 96 S.Ct. at 1244).

In deciding to abstain, Judge Preska adopted Judge Sand's reasoning in *Bankamerica International v. Bank of Credit & Commerce International S.A.,* No. 91 CIV 4913, 1992 WL 88204, 1992 U.S.Dist. LEXIS 5137 (S.D.N.Y. Apr. 17, 1992) (*Bankamerica*) another case that involved the handling of BCCI's New York assets. Citing the *Burford* doctrine, Judge Sand abstained in favor of the state liquidation proceedings. However, *Bankamerica* provides a poor analogy.

While the *Bankamerica* plaintiff claimed it had an entitlement to particular BCCI monies that was superior to the Superintendent's, Sheerbonnet has no dispute with the Superintendent. Sheerbonnet is not contesting the Superintendent's possession of or authority to liquidate assets of BCCI. Sheerbonnet does not assert a demand for "specific funds". Instead, it alleges a claim for damages against American Express arising out of its tortious conduct in handling the transfer of funds from Banque Scandinave to Sheerbonnet. Specifically, Sheerbonnet targets whether American Express erred by crediting the funds arriving from Banque Scandinave to the BCCI London account when it knew that the transfer could not be completed. Sheerbonnet therefore seeks damages for torts based on American Express's alleged misconduct.

Given such claims, we fail to see how the exercise of federal jurisdiction would impact upon matters of substantial state concern by either deciding a difficult state-law question or disrupting state efforts to establish an important state policy. The outcome of Sheerbonnet's tort claims against American Express can have no impact on the state liquidation.

Because the claims in this case are addressed to American Express's banking conduct, they do not belong in the Liquidation Court. The question to be resolved in this complaint is not whether Sheerbonnet is elevating "form over substance by attempting to relabel its claims as tort claims against" American Express, as the district court seemed to think. Rather, the question is the viability of the tort claims Sheerbonnet has asserted. We reject American Express's contention that even if the tort claims are truly tort claims, they should be resolved by the Liquidation Court.

■ American Express contends that the Liquidation Court has already heard and resolved virtually identical claims to those advanced by Sheerbonnet. However, the authority cited by American Express does not support its assertion. Furthermore, even if the Liquidation Court could handle Sheerbonnet's claims, it would not affect our decision. The mere existence of concurrent state

and federal actions concerning similar matters is not enough to warrant abstention. "Where * * * a federal court properly has subject matter jurisdiction, it has a 'virtually unflagging obligation' to exercise that jurisdiction, even if an action concerning the same matter is pending in state court." *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800 F.2d 325, 327 (2d Cir.1986) (quoting *Colorado River*, 424 U.S. at 817–18, 96 S.Ct. at 1246–47); *see New Orleans Pub. Serv., Inc.*, 491 U.S. at 362, 109 S.Ct. at 2514 ("While *Burford* is concerned with protecting complex state administrative processes from undue federal interference, it does not require abstention whenever there exists such a process, or even in all cases where there is a 'potential for conflict' with state regulatory law or policy.") (quoting *Colorado River*, 424 U.S. at 815–16, 96 S.Ct. at 1245–46).

Given the "heavy presumption favoring the exercise of jurisdiction", *Law Enforcement Ins. Co. v. Corcoran*, 807 F.2d 38, 40–41 (2d Cir.1986), *cert. denied*, 481 U.S. 1017, 107 S.Ct. 1896, 95 L.Ed.2d 503 (1987), and the differences between the claims asserted by Sheerbonnet and those being adjudicated by the Liquidation Court, we hold that the district court abused its discretion in abstaining under *Burford*.

## B. Colorado River *Abstention*

■ In *Colorado River*, the Supreme Court held that a federal court could, in exceptional circumstances, abstain where there are concurrent state and federal proceedings. 424 U.S. at 813, 96 S.Ct. at 1244. The "exceptional circumstances" necessary for abstaining under *Colorado River* requires the balancing of several factors, *see De Cisneros v. Younger*, 871 F.2d at 307 (listing factors), and the balance should be heavily weighted in favor of the exercise of jurisdiction. *See Moses H. Cone*, 460 U.S. at 16, 103 S.Ct. at 937.

We need not examine the factors to determine whether "exceptional circumstances" exist, because the state and federal proceedings here are not "concurrent" in the manner required by the *Colorado River* doctrine. *See Alliance of Am. Insurers*, 854 F.2d at

603 (some overlap of subject matter not enough to make state and federal actions concurrent); *Telesco v. Telesco Fuel and Masons' Materials, Inc.,* 765 F.2d 356, 362 (2d Cir.1985) (*Colorado River* abstention upheld where federal and state actions were "essentially the same"); *cf. General Glass Indus. Corp. v. Monsour Medical Found.,* 973 F.2d 197, 199 (3d Cir.1992) (federal and state court proceedings not "truly duplicative" as required for abstention under *Colorado River*).

First, the two proceedings involve different parties. "Similarity of parties is not the same as identity of parties." *Alliance of Am. Insurers,* 854 F.2d at 603. Sheerbonnet is not a participant in the liquidation proceeding, and the creditors seeking funds from the Liquidation Court are not plaintiffs in this case. Significantly, the Superintendent, who initiated the state-court proceedings, has expressed no interest in the pendency of this suit.

Secondly, the proceedings involve different subject matters and different forms of relief. As noted in the previous section, the issues presented here—tort claims against American Express—differ from those pressed before the Liquidation Court—creditor's claims of entitlement to BCCI's assets. *See Alliance of Am. Insurers,* 854 F.2d at 603. While the Liquidation Court is the proper forum for claims that might affect the *res* being administered by the Superintendent, in this case, Sheerbonnet seeks tort damages from American Express, and the outcome of its claims will have no impact on the state liquidation proceeding.

In sum, this is not an appropriate case for either *Burford* or *Colorado River* abstention.

The judgment of the district court dismissing Sheerbonnet's complaint is reversed.