

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-27-1994

# Marcus v. Township of Abington, et al.

Precedential or Non-Precedential:

Docket 94-1139

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Marcus v. Township of Abington, et al." (1994). *1994 Decisions*. Paper 171.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/171

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 94-1139


NORMAN S. MARCUS;
SUSAN S. MARCUS, h/w

Appellants

v.

TOWNSHIP OF ABINGTON; P. DANIEL VOLLRATH,
Individually and in his capacity as Senior Code
Enforcement Officer for Abington Township;
LAWRENCE T. MATTEO, JR., Individually and as
Superintendent of Code Enforcement for Abington
Township; BARBARA C. FERRARA, Individually and in her
capacity as Commissioner of Abington Township


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 93-cv-04620)


Argued June 21, 1994

BEFORE:  STAPLETON, GARTH, and PRATT, Circuit Judges*

(Opinion filed   October 27, 1994)


                        Michael J. McCaney, Jr. (Argued)
                        Heller, Kapustin, Gershman &
                        Vogel
                        600 West Germantown Pike

*  Honorable George C. Pratt, United States Circuit Judge for the
Second Circuit, sitting by designation.

Plymouth Meeting Executive
Campus, Suite 380
Plymouth Meeting, PA  19462

Attorney for Appellants


George H. Knoell, III (Argued)
Kane, Pugh, Knoell & Driscoll
510 Swede Street
Norristown, PA  19401

Attorney for Appellees


OPINION OF THE COURT


STAPLETON, Circuit Judge:

Appellants, Norman S. Marcus and Susan S. Marcus (the "Marcuses"), appeal an order entered by the United States District Court for the Eastern District of Pennsylvania staying their 42 U.S.C. § 1983 action for damages pending resolution of a state criminal action against them.  The Marcuses argue that the stay of their federal court case is inappropriate because the state criminal action and the federal civil rights action are not parallel proceedings under Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976).  We conclude that the stay order issued by the district court did not effectively terminate the federal court litigation and accordingly dismiss the Marcuses' appeal for want of jurisdiction.

## I.

In July 1987, the Marcuses purchased an undeveloped lot in the Township of Abington, Pennsylvania. The lot, Lot #37, was part of an area called "Pennock Woods," which was created pursuant to the "Subdivision Plan of Pennock Woods," dated June 16, 1986, and last revised on July 9, 1986. The Subdivision Plan states the "[t]he majority of the tract is heavily wooded with mature trees," and that "[i]t is the intent of the developer to maintain and/or save the majority of the existing wooded area except along streets or where underground utility construction is required." App. 8-9. The Marcuses purchased Lot #37 "because it was undeveloped, in its natural wooded state, and because they desire[d] to live in the woods, in substantial compliance with the intent of the developers as set forth in the Subdivision Plan of Pennock Woods." App. 9.

On July 31, 1987, the Marcuses obtained a building permit from the Township to construct a home on Lot #37. Their permit application included a site plan which specified various grading and erosion control measures, including a provision to pave the driveway and to landscape all exposed areas. The Township approved the site plan.

In October 1990, the Township issued the Marcuses a temporary certificate of occupancy which required the Marcuses to satisfy the following conditions: (1) complete the driveway paving, (2) remove dead trees and dead wood from the lot, (3) patch cement in both fireplaces, and (4) complete grading and landscaping. The Marcuses, believing that the site plan grading

and erosion control measures were intended only as temporary measures during construction of their home, opted to maintain their property in its natural wooded state.

The neighbors complained. Thereafter, Township Commissioner Barbara C. Ferrara cautioned the Marcuses that they were required to remove dead trees and logs from their property. After ignoring several extensions, the Marcuses received a letter, dated October 3, 1991, from P. Daniel Vollrath, the Township's senior code enforcement official, which advised the Marcuses that October 31, 1991 was the new deadline for complying with the conditional certificate of occupancy and the terms of their original site plan. In particular, the October 3 letter reminded the Marcuses that their site plan "shows that the driveway was intended to be paved and the entire site was either to be seeded or sodded," and warned them that if they remained in noncompliance they would be issued a criminal citation. App. 19.

The Marcuses did nothing. On May 19, 1992, the Township filed a criminal citation charging the Marcuses with failure to comply with Township ordinances requiring landscaping and compliance with approved site plans. The Marcuses then met with Township officials once again and were granted yet another extension, until June 30, 1992. Lawrence T. Matteo, Jr., the Township's superintendent of code enforcement, memorialized that meeting in a June 1, 1992 letter. Because Matteo's letter did not specifically require "seeding or sodding," the Marcuses did not perform that work. Nor did they complete agreed upon plantings.

A hearing was held on the criminal citation before a Pennsylvania district justice. The court ruled in favor of the Township on the charge that the Marcuses had failed to comply with the Township ordinances. The Marcuses appealed the district justice's decision to the Pennsylvania Court of Common Pleas. That appeal currently is pending.

On August 26, 1993, the Marcuses filed an action for damages in federal district court, pursuant to 42 U.S.C. § 1983, alleging that the Township, Vollrath, Matteo, and Ferrara, while acting under color of state law, violated their right to due process of law in that they "deliberately and arbitrarily abused government power" when they attempted to enforce the grading and erosion control provision because the "attempted enforcement [was] not supported in law or fact." App. 6. Further, the Marcuses charged the defendants with conspiring "to harass, intimidate, embarrass, annoy, abuse, and otherwise interfere with the [Marcuses'] liberty, privacy and due process protections." App. 13. With respect to Ferrara, the Marcuses alleged that she "interfered with the process by which the municipality enforced the provisions of building permits for her own political or personal reasons unrelated to the merits of the building permit, and the law." App. 12. Finally, the Marcuses alleged that as a "direct and proximate result of the acts of Defendants, Plaintiffs were deprived of due process of law, and were caused to suffer anxiety, mental suffering and humiliation, fright, and incurred attorney's fees to defend themselves against the illegal actions of Defendants." App. 12a.

The Township immediately filed a motion to stay or dismiss the federal action pending resolution of the Marcuses' state criminal court appeal.  On December 23, 1993, the district court granted the Township's motion, and entered an order staying the Marcuses' § 1983 action pursuant to the "exceptional circumstances" doctrine announced by the Supreme Court in Colorado River.  The Marcuses appeal the district court's order staying its federal court case.

## II.

Although the parties themselves have not raised the issue, we have an independent obligation to determine whether we have appellate jurisdiction under 28 U.S.C. § 1291 before we can review the merits of the Marcuses' appeal.  Resolution Trust Corp. v. Pasquariello (In re Pasquariello), 16 F.3d 525, 528 (3d Cir. 1994).  We conclude that the district court's order staying the Marcuses' federal court action was not a "final order" as contemplated by § 1291.  Accordingly, we will dismiss the Marcuses' appeal for want of jurisdiction.

## A.

With exceptions not here relevant, courts of appeals have authority to review a district court's order only if that order is "final" within the meaning of 28 U.S.C. § 1291.  Whether an order is "final" depends on its effect.  Stay orders normally are not appealable final orders because they merely delay proceedings in the suit.  Moses H. Cone Memorial Hosp. v. Mercury

Constr. Corp., 460 U.S. 1, 10 n.11 (1983); Schall v. Joyce, 885 F.2d 101, 104 (3d Cir. 1989); Cheyney State College Faculty v. Hufstedler, 703 F.2d 732, 735 (3d Cir. 1983); see also Hoots v. Pennsylvania, 587 F.2d 1340, 1346-47 (3d Cir. 1978) (noting that mere delay does not render an order final for purposes of appeal). Not all orders staying proceedings in a district court are unappealable, however.

The Supreme Court explored the difference between a stay from which an appeal will lie and normal stays in Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1 (1983). It held that an order staying proceedings in the district court in deference to an on-going state proceeding dealing with the same subject matter was a final order within the meaning of 28 U.S.C. § 1291. The Court so held because the stay permitted the state court to decide the sole issue in the federal case before the federal court reached it. Since the state court's determination would have to be given collateral effect in the federal case, the effect of "the stay [was] to require all or an essential part of the federal suit to be litigated in a state forum," 460 U.S. at 10 n.11, and the stay thus put the plaintiff "effectively out of federal court," id. at 9 n.8 (emphasis omitted). The Court held "that a stay order is final when the sole purpose and effect of the stay are precisely to surrender jurisdiction of a federal suit to a state court." Id. at 10 n.11. The Court stressed, by way of contrast, that a stay is not final "merely because it may have the practical effect of

allowing a state court to be the first to rule on a common issue." Id.[1]

B.

Appellate review is inappropriate here because the stay entered by the district court merely delays the federal litigation and does not effectively terminate it.  Unlike the situation in Moses H. Cone, the district court's stay will be lifted when the state criminal proceedings are concluded and the Marcuses will then receive the federal adjudication of their § 1983 claim to which they are entitled.

The action pending in the state court is a criminal action; the parties are the Commonwealth of Pennsylvania and the Marcuses.  The sole issues involved there are whether the Marcuses violated the ordinance and if so, what sanction should be imposed.  The Marcuses could not, or at least did not, place their § 1983 claim before the court in that criminal proceeding by way of counterclaim.  Moreover, the Marcuses did not ask the state court to adjudicate as a defense in the criminal case any

---

[1]. We most recently recognized and applied this Moses H. Cone distinction between appealable and nonappealable stay orders in Trent v. Dial Medical of Florida, Inc., ____ F.3d ____ (3d Cir. Aug. 12, 1994).  We there held that an order having the effect of staying a federal proceeding was appealable because a "decision in [a parallel state proceeding would] constitute res judicata as to at least two major issues (duty and breach) in" the federal case, Trent, ____ F.3d ____, and the order would thus have required "all or an essential part of the federal suit to be litigated in a state forum."  Moses H. Cone, 460 U.S. at 10 n.11.

claim that the ordinance or the conduct of federal defendants was unconstitutional.[2]

The federal suit is a civil rights action for damages in which the Marcuses are the plaintiffs and the Township and various Township officials are the defendants. While the issue of whether the Marcuses violated the ordinance may become relevant in that case, the focus of the litigation is the conduct and the motivations of the Township officials. The issues will be whether these officials acted under color of state law, whether they were guilty of arbitrary and capricious conduct that deprived the Marcuses of a liberty or property interest, and if such a deprivation occurred, what amount of compensatory and/or punitive damages are appropriate under the circumstances.

Once the stay is lifted, the state court's disposition of the criminal proceeding will have a negligible impact on the subsequent federal adjudication.[3] Because the causes of action

_____

[2]. The Marcuses advised the state court of their constitutional claims but solely for the purpose of attempting to reserve their right to subsequently litigate those claims in a federal forum. See England v. Louisiana State Bd. of Medical Examiners, 375 U.S. 411 (1964); Government & Civic Employees Org. Comm. v. Windsor, 353 U.S. 364 (1957).

[3]. It is possible that a recent Supreme Court decision, Heck v. Humphrey, ___ U.S. ___, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), precludes the Marcuses from successfully prosecuting all or a part of their § 1983 claim unless they can show that their conviction has been overturned. If so, the stay issued in this case can only benefit the Marcuses' § 1983 case because it gives them the chance to seek a reversal of their state court criminal convictions before proceeding with their § 1983 claims. Thus, the possible impact of the state proceedings on the federal ones under Heck will not deprive the Marcuses of their right to a federal adjudication of their § 1983 claim. We emphasize,

in the two proceedings are different, the criminal judgment will have no res judicata effect in the federal proceeding.  Safeguard Mut. Ins. Co. v. Williams, 345 A.2d 664, 668 (Pa. 1975).  Because the issues in the federal suit are different from those in the state case, neither side will be foreclosed by collateral estoppel with respect to the federal issues.  The order from which the Marcuses appeal thus does not "surrender jurisdiction of a federal suit to a state court," Moses H. Cone, 460 U.S. at 10 n.11; it does not require that "all or an essential part of the federal suit . . . be litigated in a state forum," id.  Rather, the effect of that order on the Marcuses' federal case is delay, and delay alone.

The "'mere prospect of delay'" does not create appellate jurisdiction where it would not otherwise exist.  Hoots v. Pennsylvania, 587 F.2d 1340, 1347 (3d Cir. 1978) (quoting Brace v. O'Neill, 587 F.2d 237, 243 n.27a (3d Cir. 1977)).  For that reason, we have consistently held in circumstances similar to this that a stay order having only the effect of delay is not a final, appealable order.  Rolo v. General Dev. Corp., 949 F.2d 695, 700-02 (3d Cir. 1991);[4] Gold v. Johns-Manville Sales Corp.,

(..continued)
however, that we express no view on the applicability of Heck to this case.

[4].  In Rolo, we held that an order staying a federal securities law case in light of on-going criminal and bankruptcy proceedings did not constitute a final order under the collateral-order doctrine announced in Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949).  Our analysis there supports a similar conclusion here.  The courts of appeals which have addressed the issue agree that a stay order, in the absence of extraordinary circumstances, does not meet the requirements of the collateral-

723 F.2d 1068, 1072 (3d Cir. 1983) (absent extraordinary circumstances an order granting a stay is not appealable); <u>Brace v. O'Neill</u>, 567 F.2d 237, 244 n.29a (3d Cir. 1977) (same); <u>Cotler v. Inter-County Orthopaedic Ass'n, P.A.</u>, 526 F.2d 537, 541 (3d Cir. 1975) (order staying proceedings in district court pending resolution of a state court suit with an overlapping factual background was not appealable); <u>Arny v. Philadelphia Transp. Co.</u>, 266 F.2d 869, 870 (3d Cir. 1959).

C.

We realize, of course, that most stay orders entered upon the authority of <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800 (1976), are subject to immediate appellate review. As the Supreme Court pointed out in <u>Moses H. Cone</u>, the <u>Colorado River</u> doctrine applies only if there is parallel state court litigation involving the same parties and issues that will completely and finally resolve the issues between the parties and, accordingly, a "decision to invoke <u>Colorado River</u> necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the [federal] case, whether it stays or dismisses." 460 U.S. at 28. In other words, because of the requirement of a parallel state court proceeding, stays entered under the authority of <u>Colorado River</u> will normally have the effect of putting the

(..continued)
order doctrine. <u>See</u> cases collected at 15A Charles A. Wright et al., <u>Federal Practice and Procedure</u> § 3914.13, at 731–33 nn.3, 5 (1992).

plaintiff "effectively out of federal court" and surrendering jurisdiction to the state tribunal. Moses H. Cone, 460 U.S. at 9 n.8.

In this case, the district court cited Colorado River in support of its decision to stay the proceedings before it. But our jurisdiction does not turn on the authority cited by the district court. It turns, rather, on the effect of the order that the district court has entered. If that order has deprived the federal plaintiff of a federal adjudication to which he or she may be entitled, it is a final order under Moses H. Cone and subject to immediate appellate review. If, as here, the order only serves to delay the federal adjudication, it is not final and not appealable.[5]

III.

We will dismiss this appeal for want of jurisdiction.

_____

[5]. Nor is the district court's order in this case reviewable under our mandamus jurisdiction. No one has suggested, and there is no reason to believe, that the federal adjudication will be unreasonably delayed by that order. See Cheyney, 703 F.2d at 735, 737–38.

<u>Marcus v. Township of Abington</u>, No. 94-1139


GARTH, <u>Circuit</u> <u>Judge</u>, <u>dissenting</u>:

"It is the tradition of this court that the holding of a panel in a reported opinion is binding on subsequent panels. Thus, no subsequent panel overrules the holding in a published opinion of a previous panel. Court in banc consideration is required to do so." Third Circuit IOP 9.1. Unfortunately, in permitting a federal district court to decline the proper exercise of its jurisdiction by its holding that we lack appellate jurisdiction to consider the Marcuses' appeal, the majority has ignored this tradition, and overruled two of our established precedents.

In a recently filed opinion dealing with appellate jurisdiction and <u>Colorado River</u> abstention, we have held that appellate jurisdiction attaches even when the district court retains substantial and continuing supervision over a federal action. <u>Trent v. Dial Medical of Florida, Inc.</u>, No. 92-2047, slip op. (3d Cir. August 12, 1994). Moreover, we have held, albeit in a somewhat different context, that "where . . . a dismissal of an appeal will have the practical effect of denying later appellate review of a district court's underlying order, the underlying order must be final, within the meaning of 28 U.S.C. § 1291." <u>Carr v. American Red Cross</u>, 17 F.3d 671, 678 (3d Cir. 1994). We also held that "where a separable and final

determination has been made by the district court, whether substantive or jurisdictional, which determination triggers a remand [to state court], we will review both the underlying final order and the remand order itself." Id. at 682-83.

Here, of course, we do not have a remand but, rather, a Colorado River abstention order that remits the proceedings to the state court. The principle, however, is the same. The district court cannot, by its order, deprive us of our review function.

Both of these decisions control the present case and lead to the inescapable conclusion that we have appellate jurisdiction over the Marcuses' appeal. By holding otherwise, the majority condones a conflict with Trent, ignores the conflict with Carr, and permits an erroneous Colorado River order to go uncorrected. The majority also discounts the fact that unless we review the district court's erroneous order at this time -- an order that even the majority must agree is erroneous (see Maj. Op. typescript at 8-10) -- it can never be reviewed or corrected by any appellate court whether state or federal.

I submit that a disposition leading to such an result should not be allowed. For that reason, I dissent.

I

Although a stay order is not normally a final decision for purposes of § 1291, the Supreme Court held in Moses H. Cone

Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1 (1983), that

a district court order granting a Colorado River stay order is

immediately appealable where the district court judge intended to

surrender federal jurisdiction to the state court so that "all or

an essential part of the federal suit [will] be litigated in a

state forum."  Id. at 10 n.11.  The Court noted in Moses H. Cone

that a district court's "grant[] of a Colorado River motion

necessarily contemplates that the federal court will have nothing

further to do in resolving any substantive part of the case

. . . ."  Id. at 28.[6]

A.

_____

[6].        Moses H. Cone involved a contractor's appeal from an
order staying a federal suit to compel arbitration.  When the
order was entered, a suit was pending in state court that would
by necessity resolve the issue of arbitration.  Accordingly, the
district court stayed the federal suit pending the resolution of
the state court proceeding pursuant to Colorado River Water
Conservation Dist. v. United States, 424 U.S. 800, 818 (1976).
        The Supreme Court found the stay order was appealable
either as a final order or as a collateral order.  The stay was
final because all or substantially all issues would be resolved
in the state court.  In so holding, the Court relied upon
Idlewild Liquor Corp. v. Epstein, 370 U.S. 713 (1962), where the
Court concluded that a stay entered pursuant to Railroad Comm'n
v. Pullman Co., 312 U.S. 496 (1941), was final, even though that
stay was "entered with the expectation that the federal
litigation will resume in the event that the plaintiff does not
obtain relief in the state court on state law grounds."  Moses H.
Cone, 460 U.S. at 10.  The Court also found that the stay was an
appealable collateral order because it satisfied all the factors
of Cohen v. Beneficial Loan Corp., 377 U.S. 541 (1949).  I
discuss the collateral order doctrine and its application to the
instant proceeding in section I.C. infra where I conclude,
contrary to the majority, that the district court order here is
reviewable as a collateral order.

The majority argues that, unlike the Colorado River stay order in Moses H. Cone, the district court's Colorado River stay order in the instant case "merely delays the federal litigation and does not effectively terminate it."  Maj. Op. typescript at 8.  In particular, the majority contends that the district court's action "does not require 'that all or an essential part of the federal suit . . . be litigated in a state forum,'" but "[r]ather the effect of that order on the Marcuses' federal case is delay and delay alone."  Id. at 10.

How the majority can draw this conclusion from the district court's disposition is indeed as startling and misguided as it is wrong.  The district court, in ordering a Colorado River abstention, held (albeit erroneously) that the federal and state proceedings were sufficiently parallel so that the state court would resolve substantially all issues.  As the Supreme Court explained in Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271 (1988), once the district court has determined that the federal and state proceedings are parallel, the conclusion is inevitable that substantially all issues will be resolved in the state court.  Id. at 278.  Indeed, the district court recognized this when it stated that plaintiffs "may be required to expose their federal claims in state court."  App. 45a.

Why else would the district court have abstained?  Its "stay order" was little more than a procedural formality and in reality stayed nothing.  The entire action was sent to the state

court for resolution. Why then a stay order? The district court explained that "because the two proceedings are not strictly parallel, it is possible that the civil rights claim could remain for resolution at the conclusion of the state proceedings. See Ingersoll–Rand Corp. v. Callison, 844 F.2d 133, 138 (3d Cir. 1982)." App. at 50a. Callison however did not hold that we are precluded from reviewing an erroneous Colorado River abstention order where it is coupled with a stay.[7] We can only surmise that the stay ordered in this case was no more than a "safety net" if, by chance, some aspect of the proceeding might return to the district court for adjudication.

As I have noted, and as my discussion of Colorado River abstention in section II infra bears out, the district court erred by abstaining. On this point, I am satisfied that, had the majority reached the merits of the abstention issue, it would have agreed with me that abstention should not have been decreed. See Maj. Op. typescript at 8–9.

_____

[7]. Callison involved a Colorado River abstention order issued by the district court which was upheld by this Court. The district court in Callison however had dismissed the federal proceeding and we suggested that it should have stayed the federal proceeding. We did not address any issues of appellate jurisdiction. It is significant however that the district court may have relied upon Callison in entering its stay without appreciating the fact that it was at the same time incorrectly surrendering adjudication of all issues to the state court. In any event, Callison did not hold that, where an erroneous grant of Colorado River abstention occurred, a stay entered in conjunction with the erroneous abstention order should be denied review.

Contrary to the position espoused by the majority, I cannot conclude -- and our precedents do not support the conclusion -- that we are divested of jurisdiction to consider the Marcuses' appeal at this time.  I suggest the majority's reasoning is seriously flawed.

The majority, without explicitly holding that the proceedings are not parallel, calls attention to the fact that the parties and the issues in the state and federal proceedings are different and hence implicitly not parallel.  Maj. Op. typescript at 8-9.  It concludes that issues will remain to be decided in the federal case after the state court proceeding has terminated.  Therefore, it reasons that the stay order only delays the resolution of those issues and accordingly the order is not appealable.

However, this reasoning deprives us of jurisdiction over an appeal of a Colorado River abstention order when review is most needed.  I cannot believe that Congress vested us with appellate jurisdiction to review Colorado River abstention/stay orders only in those cases where we conclude that the state and federal proceedings at issue are, in fact, parallel and, therefore, qualify for Colorado River abstention.  It is a perverse result indeed if we are prohibited from reviewing only those Colorado River abstention rulings involving state and federal proceedings that are neither parallel, nor identical, and

which are thus erroneous.  Moses H. Cone obviously did not intend such a bizarre result.

My reading of Moses H. Cone draws support from our recent decision in Trent v. Dial Medical of Florida, Inc., No. 92-2047, slip op. (3d Cir. August 12, 1994), a case in which we held that appellate jurisdiction vested despite an order retaining continuing supervision over the proceeding by the federal district court.

In Trent, the district court's order, though styled as a "dismissal," in fact retained control over the federal action:

> The order provides that "the case is to remain in the status quo," "discovery and settlement discussion will continue in coordination with the action currently pending in [state court]."  It also instructs the parties that the judge will be amenable to intervening if the parties ask him to do so, and that they should keep him "advised of the status of this case and the state court action."  In the same vein, it provides that "[w]hen [the parties] are ready for trial or wish a settlement conference all that is necessary is to write directly to the court or set a telephone conference."  Moreover, since entering the order, the district court judge has denied a motion to stay discovery pending this appeal, thus perhaps implying that he expects discovery to continue because the case is still pending.

Trent, slip op at 7-8.[8]  Despite the retentive nature of the district court's stay order, we held that it was a final

_____

[8].	The order entered by the district court in Trent v. Dial Medical of Florida, No. 92-2047, slip op. (3d Cir. August 12, 1994), reads as follows:

appealable order because "the district court's order effectively prevents litigation of Trent's claims in federal court and requires him to abide by the state court decision . . . ." Id. at 9.

In contrast to Trent, here the district court has severed all ties with the Marcuses' litigation. It has not maintained contact with, and it is not available to, the parties involved. The district court will not have an opportunity to revisit its Colorado River determination and its stay order. As

(..continued)

> The motion of Edwin Snead . . . to intervene as a party plaintiff is GRANTED.
>
> The motion of plaintiff Earl Trent for class certification is DENIED without prejudice.
>
> This suit is DISMISSED WITHOUT PREJUDICE. This case is to remain in status quo and the Statute of Limitations is tolled.
>
> It is further understood that all discovery and settlement discussions will continue in coordination with the action currently pending in Delaware County Court of Common Pleas styled Snead v. Community Dialysis Center, Inc. . . . . If intervention by the court is needed or desired, the parties may ask for assistance by either filing the appropriate motions, writing to the court or setting a telephone conference.
>
> The parties shall keep the court advised of the status of this case and the state court action. When they are ready for trial or wish a settlement conference all that is necessary is to write directly to the court or set a telephone conference.

in Trent, "[i]t is clear that the district court judge expected that [the state proceedings] would resolve this case, at least in large part."  Id. at 8.

In all respects, Trent presented a much more borderline set of circumstances than is presented in the instant case.  Yet, in Trent, we held that finality attached.  Id. at 9-10.  A fortiori, we must reach the same the result here, if Trent is to be accorded due precedential effect.

The majority surprisingly does no more than give a passing nod to Trent in footnote 1 of its opinion.  It seeks to explain away Trent by the following quotation: "We there held that an order having the effect of staying a federal proceeding was appealable because a 'decision in [a parallel state proceeding would] constitute res judicata as to at least two major issues (duty and breach) in' the federal case."  Maj. Op. typescript at 8 n.1.  This characterization ignores the fact that Trent rejected the same "delay" argument that the majority now employs in order to preclude review of the Marcuses' appeal.  The appellee in Trent (like the majority) argued that the district court's order was merely intended "to afford the state court an opportunity to rule first on a common issue" as a matter of "docket control."  Trent, slip op. at 7.  Trent rejected this argument.  Despite the fact that the district court in Trent "recognize[d] that there may be some issues remaining after [the state proceeding] is disposed of" and despite its suggestion that

"it might try the case whenever the parties (apparently jointly) seek a trial date," we found the order in Trent to be final and thus appealable.  Id. at 9.  We did so, because the stay in Trent, as the stay in the present case, "has the practical effect of a dismissal rather than merely delaying adjudication until completion of . . . state court proceedings."  Id.

I cannot understand how Trent, our most recent expression of finality in a Colorado River context, can be so summarily dismissed unless, as I believe it to be, any further discussion would lead to the same finality determination reached in Trent.  However, even if Trent had not been filed, thereby making it incumbent upon subsequent panels to follow its holding, Moses H. Cone, Carr and sheer logic dictate that our jurisdiction must attach.

B.

If we do not review the district court's erroneous Colorado River ruling at this time, that ruling never will be subject to review by any court.  Certainly the state court can not review the district court's abstention ruling.  Nor will we be able to review the district court's stay order.  The majority says that we cannot review it now and the issue as to whether or not the district court should have abstained, as well as the stay order, will be moot if the Marcuses' § 1983 action ever returns

to federal court.  Thus, the district court's order effectively will be unreviewable.

We have recently cautioned against just such a result, in a somewhat different context.  In Carr v. American Red Cross, 17 F.3d 671, 678-79 (3d Cir. 1994), we expressly held that a district court could not defeat appellate review of its own order dismissing the plaintiff's federal action by immediately remanding the parties to state court.  Rather, we held that "where . . . a dismissal of an appeal will have the practical effect of denying later appellate review of a district court's underlying order, the underlying order must be final, within the meaning of 28 U.S.C. § 1291."  Id. at 678.

Carr had brought an action in the Pennsylvania Court of Common Pleas against the American Red Cross and Osteopathic Medical Center, claiming that Osteopathic administered HIV infected blood that had been supplied by the American Red Cross. Osteopathic filed a cross claim against the Red Cross.  Red Cross invoked its federal charter and removed the action to the United States District Court for the Eastern District of Pennsylvania. Carr, having settled his claim with the Red Cross, then sought to remand the proceeding to the Court of Common Pleas, contending that the district court no longer had jurisdiction as a result of the release from Red Cross.  The district court granted Carr's motions to dismiss and to remand, reasoning that federal jurisdiction no longer existed.

We held that the district court's dismissal order would be effectively unreviewable on appeal from a final judgment and as a result its order being conclusive and collateral satisfied the collateral order doctrine. We also held that the dismissal of Osteopathic's appeal would have the effect of denying appellate review of the district court's underlying order and as a result appeal under § 1291 was appropriate. We pointed out that when the district court dismissed Red Cross from the action without reaching the merits of Osteopathic's cross claim, the dismissal order had in effect dismissed the cross claim. Hence, when the district court remanded the cause of action to the Common Pleas court without Red Cross as a party, all litigation concerning the cross claim had been terminated. We wrote:

> If we do not seize the opportunity to review the district court's dismissal order, that order will never be subject to review by any court, either state or federal. Given the unique circumstances before us, we conclude that such an order, even if it were not to be considered final as a collateral final order (which we hold that it is), would nonetheless, be final under § 1291, and that our hearing an appeal from such an order is consistent with federal policy against piecemeal appeals.
>
> Thus we hold that the district court could not defeat appellate review of its February 22 order of dismissal -- a final order within the meaning of § 1291 -- by immediate remand of the present case to state court.

Id. at 678-79.

In the present case, where the district court's stay order will defeat any and all appellate review of its Colorado River determination, we are compelled by precedent and reason to

conclude that the stay order is final under § 1291 and, hence, immediately reviewable by us.  In holding otherwise, the majority deliberately ignored our precedents.  Indeed, it did not even acknowledge Carr's existence when it refused to review the district court's order.

C.

Traditional "finality" analysis notwithstanding, the district court's order also is appealable as a collateral final order under Cohen v. Beneficial Loan Corp., 337 U.S. 541 (1949).  For an order to come under Cohen's collateral order exception to § 1291's finality requirement, the order "must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment."  Coopers & Lybrand v. Livesay, 437 U.S. 463, 468 (1978).

I conclude that this three-part test is satisfied for much the same reasons proffered by the Supreme Court in Moses H. Cone.  460 U.S. at 11-13.  Here, the "conclusiveness" prong of the test is satisfied inasmuch as the district court will never again have an opportunity to revisit its Colorado River determination, and its stay order.  Cf. Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 278 (1988) (holding denial of Colorado River motion is not final because "a district court usually will expect to revisit and reassess an order

denying a stay," whereas granting a Colorado River motion "necessarily implies an expectation that the state court will resolve the dispute").  Indeed, not only will the district court, in the present case, be unable to reconsider its stay order in the future, but, in addition, if that order is deemed "non-final" for purposes of review, the district court will have effectively precluded our review of the stay order, and its underlying abstention determination.

The second prong is satisfied because "[a]n order that amounts to a refusal to adjudicate the merits plainly presents an important issue separate from the merits."  Moses H. Cone, 460 U.S. at 12.  Here, of course, the district court stay order precludes any adjudication of the merits of the Marcuses § 1983 action in federal court.  Finally, the third prong is satisfied because "this [stay] order would be entirely unreviewable if not appealed now," id., inasmuch as the abstention issue will be moot when and if ever the Marcuses' § 1983 action returns to federal court.

The majority seeks to bolster its conclusion that we cannot review the district court's order by referring to the appealability of a general stay order.  (Maj. Op. typescript at 10-11.)  The majority cites five cases[9] for the principle that a

_____

[9].Rolo v. General Dev. Corp., 949 F.2d 695 (3d Cir. 1991); Gold v. Johns-Manville Sales Corp., 723 F.2d 1068 (3d Cir. 1983); Brace v. O'Neill, 567 F.2d 237 (3d Cir. 1977); and Cotler v. Inter-County Orthopaedic Ass'n, P.A., 526 F.2d 537 (3d Cir. 1975); Arny v. Philadelphia Trans. Co., 266 F.2d 869, 870 (3d Cir. 1959).

stay order, having only the effect of delay, is not a final, appealable order.  I have no problem with that principle, except that it does not apply to the present appeal.  First, none of the five cases which the majority cites involved Colorado River abstention, whether correctly granted or not.  Second, none of the cases involved the extraordinary circumstance of a district court insulating its own Colorado River abstention order (in this case erroneous) from review by combining its abstention determination with a stay order.  Third, none of the five cases discusses the collateral order doctrine in the context presented here.  Thus, the majority's reliance on those cases is misplaced as the analysis and reasoning of those authorities are inapplicable to the issue here.

Accordingly, even if the district court's stay order was not "final" within the meaning of 28 U.S.C. § 1291 -- which I would hold that it is -- the stay order is reviewable as a collateral final order.  See Carr v. American Red Cross, 17 F.3d at 674-78.

D.

In sum, I conclude that the district court's December 23, 1993 order staying the Marcuses' § 1983 action for damages is a final order under Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1 (1983), and Trent v. Dial Medical of Florida, Inc., No. 92-2047, slip op. (3d Cir. August 12, 1994).

It is also an order that Carr v. American Red Cross, 17 F.3d 671 (3d Cir. 1994), requires us to review at this time. Alternatively, it is a collateral final order under Cohen v. Beneficial Loan Corp., 337 U.S. 541 (1949). It follows then that we have jurisdiction to review the district court's abstention/stay order. As noted, two valid precedents of this Court -- Trent and Carr -- compel this result.

Because the district court's stay order, and its erroneous Colorado River determination upon which the stay was predicated, are so inextricably intertwined, the jurisdictional holding that I espouse requires additional discussion of the district court abstention ruling, even though the majority has declined to address that issue directly. The majority's reasoning suggests, as I have concluded, that because the elements of the Colorado River abstention doctrine are not present in this case, Colorado River abstention was not available for the district court to order.

II

In Heritage Farms, Inc. v. Solebury Township, 671 F.2d 743, 746 (3d Cir. 1982), we explained that "[a]bstention is a judicially created doctrine under which a federal court will decline to exercise its jurisdiction so that a state court or state agency will have the opportunity to decide the matters at issue." Nevertheless, the circumstances under which a federal

court may abstain from granting certain types of relief, and to decline to exercise its jurisdiction, are severely limited. See New Orleans Pub. Serv., Inc. v. New Orleans, 491 U.S. 350, 359 (1989).[10]

As a general matter, "federal courts lack the authority to abstain from the exercise of jurisdiction that has been conferred," inasmuch as they have an "unflagging obligation" to decide cases within their jurisdiction. Id. at 358; see Deakins v. Monaghan, 484 U.S. 193, 203 (1988). "When a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction . . . . The right of a party plaintiff to choose a Federal court where there is a choice cannot properly be denied." Willcox v. Consolidated Gas Co., 212 U.S. 19, 40 (1909) (citations omitted). Thus, it is well settled that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." McClellan v. Carland, 217 U.S. 268, 282 (1910). Absent "exceptional circumstances," even the existence of a parallel state proceeding provides insufficient reason for a federal court to refuse to exercise jurisdiction with which it properly is vested.

---

[10]. Judge Rosenn's recent opinion in Grode v. Mutual Fire, Marine & Inland Ins. Co., 8 F.3d 953 (3d Cir. 1993), briefly summarizes the history and elements of the available abstention doctrines, including Colorado River abstention.

On the other hand, in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 818 (1976), and again in Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1 (1983), the Supreme Court held that a federal court may abstain from exercising jurisdiction in deference to a pending parallel state proceeding, based on considerations of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Colorado River, 424 U.S. at 817.

Colorado River abstention only applies, however, "in situations involving the contemporaneous exercise of concurrent jurisdiction . . . by state and federal courts." Id. That is, the federal and state court proceedings must be concurrent and duplicative for a federal court to consider abstaining pursuant to Colorado River. General Glass Indus. Corp. v. Monsour Medical Foundation, 973 F.2d 197, 199 (3d Cir. 1992). Those "[c]ases that are not truly duplicative do not invite Colorado River deference." Trent v. Dial Medical of Florida, Inc., No. 92-2047, slip op. at 11 (3d Cir. August 12, 1994).

Even when the state and federal proceedings are parallel, the federal court may abstain only under "exceptional circumstances." Colorado River, 424 U.S at 818. In Colorado River, and then in Moses H. Cone, the Supreme Court weighed six factors in analyzing whether the requisite "exceptional circumstances" existed. Before an "exceptional circumstances"

analysis is undertaken, however, the district court first must be satisfied that the state and federal proceedings are, in fact, parallel.

In the present case, the district court concluded that the state and federal proceedings, though not identical, were parallel. After analyzing the six Colorado River/Moses H. Cone factors, the district court chose to abstain from exercising its jurisdiction.

The Marcuses argue on appeal, as they did before the district court, that the Colorado River doctrine is inapplicable to the present case because the federal and state proceedings are not parallel for purposes of Colorado River abstention. That is, they argue that: (1) the issues before the state and federal courts are different, as are the parties and the facts; (2) the state court action cannot afford them the relief they seek in federal court; and (3) the resolution of the state court action will not dispose of the issues pending before the federal court. I agree.

A.

As in all cases in which we are asked to review a district court's decision to abstain, we must determine, as a threshold matter, "[w]hether this case falls in the range [of cases] within which a district court may exercise discretion [to abstain]," a question over which we exercise plenary review.

<u>Grode v. Mutual Fire, Marine & Inland Ins. Co.</u>, 8 F.3d 953, 957 (3d Cir. 1993). That is, we must determine whether the state and federal proceedings at issue here are indeed parallel, inasmuch as <u>Colorado River</u> abstention is otherwise inapplicable. <u>Trent</u>, slip op. at 11-12 (recognizing that court must first determine whether state and federal proceedings are parallel).

Although federal and state actions need not be wholly identical in order for a district court to deem them "parallel," the two actions will <u>not</u> be deemed parallel unless they are substantially similar. <u>Compare</u> <u>Caminiti and Iatarola v. Behnke Warehousing Inc.</u>, 962 F.2d 698, 701 (7th Cir. 1992) (holding slight difference in parties and issues is insufficient to destroy parallel nature of two proceedings where granting of relief requested in state court would dispose of all claims raised in federal action); <u>Nakash v. Marciano</u>, 882 F.2d 1411, 1416-17 (9th Cir. 1989) (holding suits to be parallel where federal action is but a "spin-off" of more comprehensive state litigation) <u>with</u> <u>University of Md. v. Peat Marwick Main & Co.</u>, 923 F.2d 265, 276 n.16 (3d Cir. 1991) (noting that where federal claimant's claims are not subject to review in a state forum, there can be no "parallel" state court litigation on the basis of which a federal court could exercise <u>Colorado River</u> abstention).

B.

The federal and state proceedings at issue here clearly are not "parallel" under Colorado River. As a general matter, a § 1983 action may be brought in either a state or federal forum. Thus, conceivably, concurrent state and federal jurisdiction could exist over the Marcuses' damages claim. In the present case, however, the state action is criminal in nature and was initiated by the State of Pennsylvania in its criminal court. Pennsylvania law makes no provision by which the Marcuses could raise their § 1983 claim in a state criminal forum. See Hutchins v. Commonwealth, Pa. State Police Harrisburg, 604 A.2d 1130, 1131 (Pa. Commw. 1992) (holding civil action cannot be joined to a criminal appeal).

As a consequence, the Pennsylvania criminal court is precluded from addressing any of the civil claims, or providing any of the remedies, that the Marcuses presently seek to have adjudicated in their federal proceeding.[11] These deficiencies

---

[11]. A difference in remedies is a factor counseling in favor of the denial of a motion to abstain even where the parties to both actions are virtually identical. New Beckley Mining Corp. v. International Union, UMWA, 946 F.2d 1072, 1074 (4th Cir. 1991).

"The difference in remedies becomes more pronounced when one suit requires a jury and the other does not . . . ." Id. Here, the Marcuses have demanded that a jury decide the issues raised in their federal § 1983 action, and ask for an award of compensatory and punitive damages. In contrast, the state criminal action that the Marcuses presently are appealing was a non-jury proceeding before a district justice. The only relief they can hope to obtain in the state proceedings now is a reversal of their criminal conviction.

are critical.  Absent the state criminal court's exercise of concurrent jurisdiction over the Marcuses' § 1983 claim, the state proceedings -- the parties involved, the issues implicated, and the relief sought therein -- are wholly different from and, therefore, not substantially similar to, the federal proceedings initiated by the Marcuses.

First, the federal civil and state criminal actions clearly involve different parties.  See, e.g., Baskin v. Bath Tp. Bd. of Zoning Appeals, 15 F.3d 569 (6th Cir. 1994).[12]  In the federal civil lawsuit, the Marcuses have sued the Township, Vollrath, Matteo, and Ferrara as defendants-appellees.  In the state criminal action, the State of Pennsylvania is the moving party against the Marcuses.

_____

[12].  Like the present case, Baskin involved state and federal proceedings arising out of disputes related to township zoning variances.  The Sixth Circuit reversed the district court's Colorado River abstention order, holding that the state and federal proceedings were not parallel:

> The two actions arise out of the same basic
> facts, but they each contest a different
> aspect of the variance granted by the
> Township zoning board and they seek different
> relief.  The state court action, in which
> Baskin intervened as a defendant, was brought
> by disgruntled homeowners against both the
> Township and the Board.  The homeowners
> argued that the variance granted by the Board
> was excessive.  The federal court action,
> however, was brought by Baskin against the
> Township and the Board.  In this suit, Baskin
> argued that the variance was too restrictive.
> The homeowners were not parties to the
> federal case.

15 F.3d at 572.

Second, while the state and federal actions may implicate some common factual issues insofar as the Marcuses' compliance or noncompliance with land use requirements is concerned, the Marcuses' federal claims raise additional factual questions concerning, among other things, the alleged acts and conspiracy by Township officials to "harass, intimidate, embarrass, annoy, [and] abuse" the Marcuses.

Quite simply, I cannot discern how the state criminal action, brought by the State of Pennsylvania against the Marcuses, will resolve the federal civil action, brought by the Marcuses against the Township and Township officials. Conversely, I do not see how the resolution of the Marcuses' federal § 1983 action will affect the state criminal proceeding. In contrast to Colorado River, where the issues to be decided by the state and federal forums were essentially the same,[13] the two actions here differ in almost all respects.

C.

Inasmuch as the state and federal proceedings are not sufficiently similar as to constitute parallel proceedings under Colorado River, in my opinion, the Marcuses' § 1983 claim does not even fall in the range of cases within which the district

---

[13]. For example, in Colorado River, the Supreme Court held that the district court should abstain from entertaining an action brought by the United States government to settle water rights respecting the Colorado River when state proceedings to settle such rights were already underway in a state forum.

court would be permitted to exercise its discretion to abstain. Consequently, I would not even address the district court's analysis of the Colorado River/Moses H. Cone factors to determine whether the district court abused its discretion in finding that "exceptional circumstances" existed which warranted its abstaining from exercising jurisdiction over the Marcuses' § 1983 claim. See, e.g., Sheerbonnet, Ltd. v. American Express Bank, Ltd., 17 F.3d 46, 49 (2d Cir. 1994) (Pratt, J.), petition for cert. filed, 62 U.S.L.W. 3827 (May 27, 1994) (No. 93-1889); Fox v. Maulding, 16 F.3d 1079, 1081 (10th Cir. 1994). In my view, the district court erred as a matter of law when it stayed the Marcuses' § 1983 action, relying on Colorado River abstention, and that error should be corrected on the Marcuses' appeal.

III

In sum, I would hold that the district court's stay order was final for purposes of appellate review. Consequently, I would reach the merits of the Marcuses' appeal. Having considered the parties' arguments, I conclude that the district court's December 23, 1993 Colorado River stay order must be reversed on the basis that the state criminal proceeding against the Marcuses, and the Marcuses' § 1983 action against the Township, are not concurrent and parallel proceedings in which "substantially the same parties litigate substantially the same issues in different forums." New Beckley Mining Corp. v.

International Union, UMWA, 946 F.2d at 1073 (4th Cir. 1991).

Because the majority dismisses the Marcuses' appeal by erroneously holding, in conflict with this court's precedents, that we have no jurisdiction to review an admittedly erroneous district court abstention ruling, I respectfully dissent.