

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-23-2004

# CTF Hotel Holdings v. Marriott Intl Inc

Precedential or Non-Precedential: Precedential

Docket No. 02-2732

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"CTF Hotel Holdings v. Marriott Intl Inc" (2004). *2004 Decisions.* Paper 359.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/359

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF
APPEALS
FOR THE THIRD CIRCUIT

No. 02-2732 and 02-2898

CTF HOTEL HOLDINGS, INC.,

v.

MARRIOTT INTERNATIONAL, INC.;
RENAISSANCE HOTEL OPERATING
COMPANY;
AVENDRA L.L.C.

Marriott International, Inc.,
Renaissance Hotel Operating
Company,
        Appellants No. 02-2732

CTF Hotel Holdings, Inc.,
        Cross-Appellant No. 02-2898

On Appeal from the United States
District Court
for the District of Delaware
(Civil Action No. 02-CV-271)
District Judge: Hon. Sue L. Robinson

Argued: November 3, 2003

Before: McKEE, SMITH and WEIS,
Circuit Judges.

(Opinion Filed: August 23, 2004)

EMMET T. FLOOD, ESQ. (Argued)
GREGORY B. CRAIG, ESQ.
KENNETH C. SMURZYNSKI, ESQ.
BRENDAN V. SULLIVAN, JR., ESQ.
Williams & Connelly LLP
725 12th Street, N.W.
Washington, DC   20005

DANIEL A. DREISBACH, ESQ.
JESSE A. FINKELSTEIN, ESQ.
Richards, Layton & Finger, P.A.
P.O. Box 551
Wilmington, DE   19899

Attorneys for Appellants and Cross-
Appellees,
Marriott International, Inc., and
Renaissance Hotel Operating Co.

JONATHAN J. LERNER, ESQ.
(Argued)
MAURA B. GRINALDS, ESQ.
TIMOTHY G. NELSON, ESQ.
Skadden, Arps, Slate, Meagher & Flom
LLP
4 Times Square
New York, NY   10036

EDWARD P. WELCH, ESQ.
STEPHEN D. DARGITZ, ESQ.
Skadden, Arps, Slate, Meagher & Flom
LLP
1 Rodney Square
P.O. Box 636
Wilmington, DE   19899

Attorneys for Appellee and Cross-Appellant,
CTF Hotel Holdings, Inc.

---

OPINION OF THE COURT

---

McKEE, Circuit Judge.

We are asked to determine if the District Court erred in ruling that CTF Holdings, Inc., was not obligated to arbitrate its breach of contract dispute with Marriott International and Renaissance Hotels (together "Marriott"). We are also asked to determine if the court erred in staying that litigation pending resolution of related arbitration between Marriott and Hotel Property Investments Ltd. ("HPI"). For the reasons that follow, we will affirm the court's ruling that CTF was not required to go to arbitration, but we will reverse the District Court's decision to stay CTF's suit against Marriott for breach of contract pending resolution of Marriott's arbitration with HPI.

## I. FACTS AND PROCEDURAL HISTORY

In 1993, Renaissance signed an agreement with CTF to manage the 20 CTF hotels at issue here ("the CTF Master Agreement").[1] In 1995, Renaissance signed an agreement with HPI to manage 44 other hotels ("the HPI Master Agreement"). Marriott International purchased Renaissance in 1997 and continued to operate it as a wholly-owned subsidiary. In 1999, Marriott, HPI and CTF entered into an agreement governing all of the aforementioned 64 hotels and incorporating the CTF and HPI Master Agreements ("the 1999 Agreement").[2]

Section IX.K of the 1999 Agreement addresses dispute resolution and states:

> **Governing Law; Dispute Resolution**. . . . In the event of any dispute or difference arising out of or relating to this Agreement, if such dispute or difference relates to or arises out of a Hotel owned or leased by CTF (or otherwise governed by the CTF Master Agreement), then such dispute or difference shall be subject to the dispute resolution provisions in the CTF

---

[1] Renaissance Hotel was then known as "Ramada Hotel Operating Company" and CTF was then known as "Stouffer Hotel Holdings, Inc." JA 211.

[2] The 1999 Agreement was produced after CTF notified Marriott that Marriott had breached the CTF Master Agreement in 1998, and gave Marriott a final notice of default in April 1999.

Master Agreement;[3] and if such dispute or difference relates to or arises out of a Hotel owned or leased by HPI (or otherwise governed by the HPI Master Agreement), then such dispute or difference shall be subject to the dispute resolution provisions in the HPI Master Agreement.[4] Nothing herein is intended to require arbitration of any dispute under the CTF Master Agreement or to limit any right any party may have to proceed in federal or state court on any dispute under the CTF Master Agreement.[5]

The CTF Master Agreement is silent as to the duty to arbitrate and therefore imposes no such obligation. However, the HPI Master Agreement contains the following section requiring arbitration:

> **9.6** <u>**Governing Law: Arbitration: Consent to Jurisdiction**</u>. The parties hereto shall use their best efforts to settle any disputes or differences arising out of or relating to this Agreement. . . . If they do not reach [a] solution within a period of thirty (30) days, then the dispute or difference shall be finally settled by arbitration in accordance with the rules of the American Arbitration Association.

In 2001 and 2002, CTF and HPI began questioning Marriott's performance under the 1999 Agreement, and in March 2002, CTF notified Marriott that it was in default under that Agreement.[6] Marriott thereafter initiated arbitration against CTF and HPI seeking declaratory relief regarding the issues that had been identified in the default notice. One such issue involved proceeds from an audio-visual program conducted in certain hotels

---

[3] We shall refer to the portion of Section IX.K up to this footnote as "Clause 1."

[4] We shall refer to the portion of Section IX.K from the end of Clause 1 to this footnote as "Clause 2."

[5] We shall refer to the portion of Section IX.K from the end of Clause 2 to this footnote as "Clause 3."

---

[6] This was the second notice of default that CTF had issued Marriott. See *supra* note 2.

operated by Marriott (the "Molloy dispute"). Another issue involved the scope of CTF's and HPI's rights to review and audit the amount of unrestricted allowances Marriott received under its management agreements (the "audit dispute").

HPI did not dispute that it was obligated to arbitrate the Molloy and audit disputes with Marriott under the 1999 Agreement. However, CTF maintained that it was not obligated to arbitrate. It filed a 21-count complaint against Marriott and a third defendant, Avendra LLC,[7] in the District Court. The complaint included issues involving the Molloy and audit disputes as well as other claims for relief.[8]

---

[7] Marriott describes Avendra as "an independent company founded by Marriott International, Inc., Hyatt Corporation, Bass Hotels & Resorts, Inc., Fairmont Hotels Inc., and Club-Corp., Inc. to provide centralized procurement services with improved quality and pricing of goods and services through the aggregation of purchasing power." Appellant's Br. at 6.

[8] Count 2 of the complaint raises the disputes over both the audit provision and the returns from the Molloy program. CTF's complaint also states the following claims against Marriott: breach of contract, breach of fiduciary duty, intentional misrepresentation, negligent misrepresentation, fraud, conversion, and breach of the covenant of good faith and fair dealing. The other counts in the complaint accuse Marriott International

CTF also petitioned the District Court to enjoin Marriott's attempt to require it to arbitrate its disputes, and Marriott moved to compel CTF to arbitrate pursuant to the Federal Arbitration Act, 9 U.S.C. § 4.

As noted earlier, the District Court granted CTF's motion to enjoin arbitration of its claims and denied Marriott's motion to compel CTF to arbitrate. However, the court then stayed litigation of CTF's breach of contract suit pending the resolution of Marriott's arbitration with HPI. The court explained that it was doing so "in order to promote some efficiencies of judicial administration and in light of the participation in this litigation of defendant Avendra (a non-party to the Master and 1999 Agreements)."

Thereafter, Marriott appealed the court's refusal to compel CTF to arbitrate, and CTF cross-appealed the court's order staying CTF's breach of contract suit pending resolution of the arbitration between Marriott and HPI.[9]

---

and Avendra of aiding and abetting breach of fiduciary duty and tortious interference with contract, and state claims against all three defendants for unjust enrichment, civil RICO violations, and Robinson-Patman Act violations.

[9] Marriott also filed a motion to dismiss CTF's appeal arguing that the District Court's stay was not a final order. We consider Marriott's motion to dismiss the appeal together with the merits.

4

## II. JURISDICTION

We may review the denial of Marriott's motion to compel arbitration under 9 U.S.C. § 16(a)(1)(B), which provides for jurisdiction over appeals from orders "denying a petition under [9 U.S.C. § 4] to order arbitration to proceed[.]"

Marriott questions whether we have jurisdiction over CTF's cross-appeal of the District Court's stay, and has moved to dismiss CTF's appeal for lack of subject-matter jurisdiction. Marriott argues that the stay is not a final order and is therefore not appealable. We agree that a stay is usually not a final order because it provides only a temporary respite from litigation. *Marcus v. Twp. of Abington*, 38 F.3d 1367, 1370 (3d Cir. 1994). However, when a stay amounts to an effective dismissal of the underlying suit, it may be subjected to appellate review. *Cheyney State Coll. Faculty v. Hufstedler*, 703 F.2d 732, 735 (3d Cir. 1983) (citing *Moses H. Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)); *see also United States v. Spears*, 859 F.2d 284, 287 (3d Cir. 1988) (holding that appellate review was effectively foreclosed unless we exercised pendent jurisdiction because the issues would become moot and untouchable because of the procedural limbo in which the decision placed the case). We have also recognized that an indefinite stay order that unreasonably delays a plaintiff's right to have its case heard is appealable. *Hufstedler*, 703 F.2d at 735; *see also Haberern v. Lehigh & New England Ry.*, 554 F.2d 581, 584 (3d Cir. 1977) (holding that a stay order of indefinite length which singles out a claim for extended delay, while others of a similar nature proceed, is appealable).

Here, the District Court decided two important legal issues. First, it found the 1999 agreement did not require CTF to arbitrate the Molloy and audit disputes in CTF's complaint. Second, it delayed CTF's litigation so that it would not proceed until after the arbitration between HPI and Marriott was resolved. In a very practical sense, CTF – which admittedly has the right to bring suit in the federal court – has been blocked from proceeding in that forum until the issues are resolved in the arbitration.

The stay order at issue here is not "indefinite" *per se* because the District Court stated that it would "reconsider [the stay] if it appears that the arbitration is not proceeding apace." There is, however, no way of foretelling how long CTF's suit must remain in limbo. Moreover, we see no way for CTF to attempt to expedite HPI's arbitration with Marriott because CTF is not a party to it.

If CTF's suit must suffer indeterminate delay pending the outcome of HPI's arbitration with Marriott, CTF will be without any way of challenging the propriety of the District Court's stay or the procedural limbo that inevitably results from it. CTF will certainly not be able to challenge the order at the conclusion of that arbitration because the stay will become moot and unreviewable. Time only runs in one direction. Accordingly, we can not correct any error the District

Court may have made in staying CTF's suit unless we review it now.

We have recognized the concept of pendent appellate jurisdiction where a case is "rife with special circumstances which bring it outside the general rule and so limit its precedential value as to not measurably weaken our continued aversion to piecemeal appeals." *Haberern*, 554 F.2d at 584. However, in *Swint v. Chambers Cty. Comm'n.*, 514 U.S. 35, 48 (1995), the Supreme Court "counsel[ed] resistance to expansion of appellate jurisdiction . . . ". In doing so, however, the Court noted that it had "not universally required courts of appeals to confine review to the precise decision independently subject to appeal." *Id*. at 50 (citing *Thornburgh v. American College of Obstetricians and Gynecologists*, 476 U.S. 747, 755-57 (1986)). *Swint* did not resolve "whether or when it may be proper for a court of appeals, with jurisdiction over one ruling, to review, conjunctively, related rulings that are not themselves independently appealable." 514 U.S. at 50-51.

Following *Swint*, we concluded that the Supreme Court had limited the doctrine of pendent appellate jurisdiction to two circumstances: "inextricably intertwined orders or review of the non-appealable order where it is necessary to ensure meaningful review of the appealable order." *E.I. Dupont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 203 (3d Cir. 2001). As Judge Smith correctly points out, the merits of the District Court's stay order here involve "consideration of myriad factors affecting judicial economy, the 'hardship or inequity' that Marriott would face in going forward with the litigation, and the injury that a stay would inflict on CTF." Concurring and Dissenting Op. at 2 (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936)). As our colleague also points out, those "considerations are distinct from the questions of contract interpretation presented in Marriott's appeal." *Id*. The fact that they are "distinct" does not mean, however, that they are not "intertwined."

Since the District Court's stay order would be unreviewable and moot at the conclusion of HPI's arbitration with Marriott, the umbilical connection between it and the District Court's stay is not neatly severed. As will be evident from our discussion below, "there is sufficient overlap in the facts relevant to both the appealable and non-appealable issues to warrant *plenary* review." *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 594 (3d Cir. 2004) (emphasis in original) (quoting *E.I. Dupont de Nemours & Co.*, 269 F.3d at 203). The case is therefore "rife with special circumstances" allowing for appellate review without running afoul of this court's "continued aversion to piecemeal appeals[,]" *Haberern,* 554 F.2d at 584, or the Supreme Court's holding in *Swint*. In addition, at this point of the proceedings, we are unable to determine what preclusive effect, if any, the arbitration may have on CTF's suit in the District Court. Accordingly, we hold that

6

we may properly exercise pendent appellate jurisdiction over the District Court's order staying that suit while HPI proceeds with its arbitration against Marriott.

## III. DISCUSSION

### A. Marriott's Appeal[10]

Marriott appeals the District Court's conclusion that the Agreements allow CTF to litigate its claims and do not require arbitration. Marriott argues that the disputes at issue involved interpretation of provisions of the 1999 Agreement, and that CTF must arbitrate any disputes relating both to CTF and HPI hotels under the dispute resolution provision in that agreement.

"Arbitration is strictly a matter of contract. If a party has not agreed to arbitrate, the courts have no authority to mandate that [it] do so." *Bel-Ray Co. v. Chemrite*, 181 F.3d 435, 444 (3d Cir. 1999). Principles of contract law therefore govern our inquiry. When interpreting contracts, we are required to read contract language in a way that allows all the language to be read together, reconciling conflicts in the language without rendering any of it nugatory if possible. *New Castle Cty. v. National Union Fire Ins. Co.*, 174 F.3d 338, 349 (3d Cir. 1999).

---

[10] We exercise plenary review over the District Court's legal conclusions about contract provisions for arbitration. *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 176 (3d Cir. 1999).

Thus, Section IX.K of the 1999 Agreement controls our analysis. Marriott argues that Clause 2, which states that a dispute relating to a Hotel owned or leased by HPI must be resolved under the HPI Master Agreement, governs the disputes at issue. According to Marriott, the instant disputes relate to both HPI hotels and CTF hotels as is evident from the litigation/arbitration involving Marriott, CTF, and HPI. Therefore, argues Marriott, its dispute with CTF has to be governed by Clause 2 and the HPI Master Agreement controls. As noted above, the HPI Master Agreement contains a dispute resolution clause requiring "the parties [thereto]" to arbitrate disputes that can not be settled by the good faith efforts of those parties.

However, CTF was not a party to that agreement. Moreover, Marriott's interpretation ignores that Clause 1 of Section IX.K is also relevant to the disputes at issue here because they relate to CTF hotels as well as HPI hotels and thus implicate the CTF Master Agreement. As noted above, the CTF Master Agreement does not require arbitration of disputes between CTF and Marriott. As also noted above, we are obligated to interpret contracts in a manner that gives meaning to every word. If we read Clauses 1 ("such dispute . . . relates to . . . a Hotel owned or leased by CTF") and 2 ("such dispute . . . relates to . . . a Hotel owned or leased by HPI") as mutually exclusive, the confusion disappears along with the conflict. Under this interpretation, where a dispute relates to CTF, the CTF Master Agreement governs

7

and there is no duty to arbitrate pursuant to Clause 1; but where a dispute relates to HPI, the HPI Master Agreement governs and there is a duty to arbitrate pursuant to Clause 2. Accordingly, under *New Castle County*, we read Clauses 1 and 2 as mutually exclusive in order to eliminate the conflict and give meaning to every word in the relevant clauses of the 1999 Agreement.

Moreover, the resulting interpretation is eminently reasonable. The 1999 Agreement maintained the separate CTF and HPI Master Agreements with their corresponding dispute resolution provisions. As CTF observes, "the lack of a unitary arbitration provision for disputes common to CTF and HPI in Section IX.K is no accident . . . ." Brief at 21. Clause 3 makes this crystal clear. As noted above, Clause 3 provides that: "Nothing herein is intended to require arbitration of any dispute under the CTF Master Agreement or to limit any right any party may have to proceed in federal or state court on any dispute under the CTF Master Agreement." Marriott's interpretation requires that we strike Clause 3 from the 1999 Master Agreement. Of course, we can not do that.

If the parties really intended the result Marriott urges upon us here, they could easily have provided for it by simply requiring that any dispute that similarly involves Marriott's operation of both CTF and HPI hotels be governed by the HPI Master Agreement or be subject to arbitration, notwithstanding anything to the contrary in the CTF Master Agreement. No such language appears, and Clause 3 is precisely to the contrary. That Clause clearly provides for certain disputes arising under the 1999 Agreement to be excepted from arbitration. It therefore vitiates Marriott's argument that Clause 2 gives rise to a presumption that all disputes arising under the 1999 Agreement must be arbitrated. Such a presumption is applicable only in "the absence of any express provision excluding a particular grievance from arbitration. . . ." *AT & T Tech., Inc. v. Comm. Workers of America,* 475 U.S. 643, 650 (1986) (internal citation and quotation marks omitted). Moreover, even if the disputes regarding CTF hotels are identical to those regarding HPI hotels, CTF's claim pertains only to its hotels. Such disputes are subject to the CTF Master Agreement, and CTF is therefore not required to arbitrate.

Marriott argues that evidence outside the parties' contracts establishes that CTF and HPI have an identity of interests that makes them functionally the same corporation, thus binding CTF to HPI's contractual obligation to arbitrate disputes. Marriott also argues that, even if CTF is not actually contractually obligated to arbitrate these disputes, CTF should be estopped from litigating its claim because the parties' correspondence indicates that it relied on the HPI Master Agreement to assert its rights. Both arguments require us to consider evidence extrinsic to the written contract. Such evidence is admissible to explain the terms of a written contract when there is ambiguity in the

8

contract. 58 N.Y. JUR. 2d *Evidence and Witnesses* §586 (2003).[11] The contracts here leave no ambiguity regarding the terms of the dispute resolution mechanisms. Therefore, extrinsic evidence such as the parties' correspondence can not properly be considered. This leaves these arguments without any foundation.

Thus, the District Court correctly held that CTF is not required to arbitrate its dispute with Marriott, and it properly denied Marriott's motion to compel arbitration and enjoined the arbitration of CTF's disputes.

### B. The Cross-Appeal

As we noted earlier, CTF cross-appeals the District Court's stay of its claim against Marriott and Avendra. It argues that the District Court abused its discretion by staying litigation pending resolution of the separate arbitration proceeding between Marriott and HPI. CTF claims that the stay abrogated its right to resolve its disputes through litigation, a right that the District Court acknowledged in denying Marriott's motion to compel arbitration. According to CTF, the District Court took away with one hand the very thing it awarded with the other. We agree.[12]

---

[11] The parties agreed that disputes will be governed by New York law in Section IX.K of the 1999 Agreement.

[12] We review to see if the District Court abused its discretion in issuing the stay.

The District Court identified two grounds for staying the litigation, Avendra's participation and judicial efficiency. Neither justifies the stay.

Judicial efficiency does not, by itself, allow a federal court to refuse to exercise its jurisdiction in favor of proceedings in an alternative forum. The Supreme Court has stated: "[g]enerally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction," noting that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (internal citations and quotation marks omitted); *see generally* ERWIN CHEMERINSKY, FEDERAL JURISDICTION § 14.2 (3d ed. 1999). The Court later reaffirmed this holding, stating that its task as a reviewing court was "not to find some substantial reason for the exercise of federal jurisdiction by the District Court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the surrender of that jurisdiction." *Moses H. Cone Hospital v. Mercury Const. Corp.*, 460 U.S. 1, 25-26 (1983) (citing to *Colorado River*). Indeed, if the reverse were true, federal

---

*Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 19 (1983).

9

courts would be able to rely upon judicial economy and stay litigation whenever plaintiffs elected to file state actions related to their pending federal claims. *See* FEDERAL JURISDICTION, *supra*, at § 14.2 ("[R]equiring federal court dismissal would give litigants a powerful tool to keep cases out of federal court or remove cases to state court simply by filing a parallel suit in state court.")

We recognize the potential for judicial efficiency that lies in possible collateral estoppel because the arbitrator could make determinations relevant to CTF's federal claims. However, we have already explained that staying litigation for that reason effectively denies CTF its contracted for day in court. The right to litigate would mean little if the substance of the litigation, when CTF's day in court finally dawns, may be driven by something that may have occurred during arbitration.

Similarly, Avendra's presence does not provide a satisfactory basis for the stay. The Supreme Court has said that, when a District Court decides whether to stay a suit pending the outcome of another suit in the same forum, "the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward. . . ." *Landis v. North Am. Co.*, 299 U.S. 248, 255 (1936). Although the situation here differs because the District Court had to decide whether to stay this litigation pending the outcome of an arbitration, the same logic applies. The opposing party must state a clear countervailing interest to abridge a party's right to litigate. Marriott argues that it can make out the clear hardship or inequity needed to support the District Court's stay and, unlike Avendra, it filed a formal motion in support of this argument. However, the District Court did not stay the litigation based on any hardship to Marriott; it stayed the litigation based on Avendra's presence in the litigation and considerations of judicial efficiency. Accordingly, any hardship Marriott may now claim is not before us.

Nor is there any evidence to support a finding of hardship or inequity to Avendra in the record. Avendra stated "a preference" that the arbitration proceed first when it spoke briefly to the District Court at a hearing on Marriott's motion to compel arbitration and CTF's motion for preliminary injunction. The basis for its preference was that it would be forced to defend itself twice – once in arbitration, once in litigation – unless the litigation was stayed in favor of the arbitration. It believed that the arbitration was likely to settle claims relating to it and this would prevent it from ever having to deal with CTF or defend in the litigation. However, Avendra's convenience can not defeat CTF's contractual right to litigate. Moreover, it is not at all clear that it would actually be inequitable to expect Avendra to defend itself against two claims brought by two separate corporations.

## IV. CONCLUSION

For all of the above reasons, we will affirm the order of the District Court denying Marriott's request to compel

10

arbitration against CTF, and we will reverse the District Court's order staying CTF's litigation against Marriott.

CTF HOTEL HOLDINGS, INC. V. MARRIOTT INTERNATIONAL, INC. (NOS. 02-2732 & 02-2898)

SMITH, *Circuit Judge*, Concurring in Part and Dissenting in Part:

I agree with the majority that the contract between the parties is "crystal clear" that disputes between CTF Hotel Holdings, Inc. ("CTF") and Marriott International, Inc. ("Marriott") are not subject to mandatory arbitration. Slip Op. at 13. I part company with my colleagues in their decision to exercise jurisdiction over CTF's cross-appeal from the District Court's discretionary stay order. The majority correctly observes that "a stay is usually not a final order because it provides only a temporary respite from litigation." Slip Op. at 7 (citing *Marcus v. Twp. of Abington*, 38 F.3d 1367, 1370 (3d Cir. 1994)). Nevertheless, the majority concludes that the District Court's order is reviewable under the doctrine of pendent appellate jurisdiction. Because the stay order in this case is neither "inextricably intertwined with" nor "necessary to ensure meaningful review of" the District Court's order granting CTF's motion to enjoin

arbitration and denying Marriott's motion to compel arbitration, I respectfully dissent. *E.I. Dupont De Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediaries, S.A.S.*, 269 F.3d 187, 203 (3d Cir. 2001) (quoting *Swint v. Chambers County Comm'n*, 514 U.S. 35, 50-51 (1995)).

The question whether the District Court abused its discretion in granting the stay involves the District Court's consideration of myriad factors affecting judicial economy, the "hardship or inequity" that Marriott would face in going forward with the litigation, and the injury that a stay would inflict on CTF. *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). These considerations are distinct from the questions of contract interpretation presented in Marriott's appeal. Indeed, the majority has no difficulty extricating Marriott's appeal from CTF's cross-appeal. The majority *first* interprets the contract between the parties (correctly, I may add), and *then* proceeds to the factually and analytically distinct question presented in the cross-appeal. The majority's opinion demonstrates that it "can readily decide" the meaning of the parties' contract "without at all considering" whether the stay order was a valid exercise of the District Court's discretion. *E.I. Dupont De Nemours*, 269 F.3d at 204 (quoting *Rein v. Socialist People's Libyan Arab Jamahiriya*, 162 F.3d 748, 759 (2d Cir. 1998)); *see also In re Montgomery County*, 215 F.3d 367, 375-76 (3d Cir. 2000). Accordingly, the issues raised in the appeal and the

cross-appeal are not "inextricably intertwined."

Nor is it necessary to exercise jurisdiction over the cross-appeal in order to meaningfully adjudicate Marriott's appeal. I am sympathetic to the majority's concern that staying CTF's litigation pending the arbitration between Hotel Property Investments Ltd. ("HPI") and Marriott effectively denies CTF the benefit of its bargain with Marriott. We have determined that the parties bargained for a two-track dispute resolution procedure, with HPI subject to mandatory arbitration and CTF free to go to court. Nevertheless, the freedom from arbitration that CTF bargained for is not unqualified. Instead, CTF's right to litigate its disputes with Marriott is necessarily subject to the District Court's "power to stay proceedings [which] is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis*, 299 U.S. at 254. Returning the case to the District Court without disturbing the stay puts CTF in precisely the position it bargained for, *i.e.*, that of any other litigant subject to the ordinary incidents of litigation, including the court's inherent power to control its docket.

This case is therefore distinguishable from *Palcko v. Airborne Express, Inc.*, 372 F.3d 588 (3d Cir. 2004), decided after oral argument in this case. In *Palcko*, the district court denied a motion to compel arbitration on two grounds: (1) because the arbitration agreement was exempted from the coverage of the Federal Arbitration Act such that arbitration could not be compelled under Federal law; and (2) because this FAA exemption preempted enforcement of the arbitration agreement under state law. *Id.* at 591. This Court affirmed the district court's ruling that the arbitration agreement was exempted from enforcement under the FAA, exercising jurisdiction under 9 U.S.C. § 16(a). *Palcko*, 372 F.3d at 591, 594. We exercised pendent appellate jurisdiction over the district court's second ruling—that the FAA exemption preempted enforcement of the arbitration agreement under state law—holding that review of both issues was "necessary to ensure meaningful review of the District Court's order in its entirety." *Id.* at 595.[13]

In *Palcko*, the appealable and non-appealable issues were both necessary conditions to the same order—the denial of the motion to dismiss. Resolving either issue in defendant's favor would have required reversal of the order, triggering arbitration proceedings. *Id.* at 596 (reversing the district court's preemption ruling and remanding for enforcement of the arbitration agreement under state law). Had we not exercised jurisdiction over the district court's preemption ruling, defendant would have been required to defend the discrimination action in federal district court. If, on a subsequent appeal

---

[13] 9 U.S.C. § 16(a) only covers motions to compel under the FAA, and does not cover motions to compel under state law. *Palcko*, 372 F.3d at 594.

from a final order in that action, we were to reverse the district court's preemption ruling, the right to arbitration would already have been lost. A victory at that stage would be meaningless because the defendant employer would have already been subjected to the protracted litigation that it sought to avoid through the arbitration agreement.

In this case, the District Court's stay order is independent of its order on Marriott's motion to compel, and was not a necessary condition to its refusal to compel arbitration. Thus, unlike the situation in *Palcko*, resolution of the non-appealable issue does not necessitate a particular ruling on the appealable order. And as discussed above, the stay order does not threaten to destroy CTF's right to litigate. CTF is not a party to the HPI arbitration, and the stay order does not force CTF into arbitration. Although CTF's lawsuit has been delayed, CTF's right to litigate remains intact, subject to the District Court's inherent power to manage its docket.

I am also sympathetic to the majority's concern that the District Court's stay order may expire and become moot before an appealable final order can issue. Slip Op. at 8.[14] This, however, is true of

every stay order, and therefore does not support jurisdiction by itself. *E.g., Marcus*, 38 F.3d at 1370 (stay pending completion of parallel state court criminal proceedings not appealable). Ordinarily, we guard against the danger of a stay order becoming "effectively unreviewable" by applying the collateral order doctrine. *See Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 11-12 (1983) (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949)). An order staying litigation pending other proceedings may be an appealable collateral order where it puts a litigant "effectively out of court." *Moses H. Cone*, 460 U.S. at 10 & n.11. But where those other proceedings will have no preclusive effect on the federal litigation, the litigant cannot be said to be "effectively out of court," and the stay order is not appealable. *Id.* at 10, 12; *Marcus*, 38 F.3d at 1371; *Trent v. Dial Med. of Fla., Inc.*, 33 F.3d 217, 221 (3d Cir. 1994). CTF—the party invoking pendent appellate jurisdiction—insists that the HPI arbitration will have no preclusive effect against CTF in its lawsuit against Marriott. Accordingly, CTF cannot suggest that the stay order has put it "effectively out of court." Instead, the effect of the stay is "delay, and delay alone." *Marcus*, 38 F.3d

---

[14] Of course, it is also possible that the stay order will be vacated by the District Court prior to the termination of the HPI arbitration, or that CTF and Marriott will settle their dispute. The potential that CTF's cross-appeal will be mooted by the

expiration of the stay must therefore be balanced against the possibility that the stay may terminate under circumstances acceptable to CTF.

13

at 1371.[15]

Because the District Court's stay order is not an appealable final or interlocutory order, and because I believe that review of the stay order is not "necessary to ensure meaningful review of" the order enjoining arbitration, I would dismiss CTF's cross-appeal for lack of jurisdiction.

---

[15] While a stay of indefinite and unreasonable duration may be appealable, we are not confronted with such an order in this case. *See Haberern v. Lehigh & New England Ry.*, 554 F.2d 581, 584 (3d Cir. 1977) (vacating stay pending proceedings that had been ongoing for ten years and whose "expected longevity . . . exceed[ed] that of the plaintiff").